**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **16-05822-jw**

## ORDER DENYING MOTION TO EXTEND DEADLINE FOR FILING COMPLAINT TO DETERMINE DISCHARGEABILITY

The relief set forth on the following pages, for a total of 9 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**08/18/2017**



*[signature: John E. Waites]*

US Bankruptcy Judge
District of South Carolina

Entered: 08/18/2017

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| IN RE: | C/A No. 16-05822-JW |
|---|---|
|  | Chapter 13 |
| Louis Joseph Novak, Jr, |  |
| Debtor. |  |

## ORDER DENYING MOTION TO EXTEND DEADLINE FOR FILING COMPLAINT TO DETERMINE DISCHARGEABILITY

This matter comes before the Court on the motion of Bennie R. Horton, III, and Gary and Tiffany Lucca (collectively "Creditors"), for an Order from the Court equitably tolling the deadline established by Federal Rule of Bankruptcy Procedure 4007(c) for Creditors to file a complaint to determine the dischargeability of a debt ("Motion") owed by the debtor Louis Joseph Novak, Jr. ("Debtor"). Debtor filed an objection to the Motion.

After considering the record in this matter, including the arguments of counsel and the proffer of testimony and evidence made at the hearing, the Court finds that Creditors have failed to meet their burden of proof to justify the Court's application of the doctrine of equitable tolling, and therefore denies the relief requested in the Motion.

## FINDINGS OF FACT[1]

The facts in this case are undisputed.

1.  Debtor filed a petition under Chapter 13 of the Bankruptcy Code on November 17, 2016. The Notice of Chapter 13 Case ("Notice") set February 20, 2017 as the last day to oppose the dischargeability of certain debts ("Complaint Deadline"), and March 22, 2017 as the deadline for creditors to file proofs of claim ("Claim Deadline").

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

2. Debtor listed Creditors in his schedules as the holders of unsecured, non-priority, disputed, contingent claims in unknown amounts.[2]

3. Creditors were served with the Notice, and had actual knowledge of the Complaint Deadline and Claim Deadline.

4. In the early afternoon of December 16, 2016, Creditors and their state court attorney Mr. Otto Ferrene ("Ferrene"), met with Mr. Phil Fairbanks ("Bankruptcy Counsel"), to discuss Debtor's bankruptcy and its impact on the State Court Action. Bankruptcy Counsel advised Ferrene and Creditors that Creditors should file a proof of claim and an adversary complaint in the Bankruptcy Court seeking to have their claims against Debtor excepted from discharge pursuant to 11 U.S.C. § 523(a)(2) or (4).[3] Creditors agreed with this approach and, although Bankruptcy Counsel advised them that he would soon be leaving for the West Coast for the birth of his grandchild, Creditors declined his offer to refer them to another attorney who could act more quickly, and engaged Bankruptcy Counsel to represent them.

5. As he finished meeting with Creditors, Bankruptcy Counsel was notified by his wife (who is also his office manager), that serious complications had arisen during the birth of their grandchild. Almost immediately, the couple left for the West Coast to be with their family.

6. At 10:05 p.m. on the same day, December 16, 2016, and after his departure from South Carolina, Bankruptcy Counsel sent an email to his office staff (including his wife), advising them of his retention by Creditors, both of the important case deadlines, and the planned course of

---

[2] Creditors' claims against the Debtor appear to arise out of a prepetition transaction between the parties that is the subject of a state court lawsuit captioned *Horton, et. al v. Novak, et al.*, Case No. 2014-CP-07-0032 ("State Court Action"). In the State Court Action, Creditors asserted causes of action against Debtor for breach of contract, fraud, and negligent misrepresentation, and Debtor asserted counterclaims against Creditors for breach of contract and indemnification.

[3] Hereinafter, all references to provisions under the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, shall be by section number only.

action ("Email").  The Email concluded, "When I get back from West Coast file claim and dischargeability complaint."

7.  Bankruptcy Counsel and his wife stayed on the West Coast until late January 2017,[4] and then returned to South Carolina and work.  During his absence, Bankruptcy Counsel's office remained open and conducted business, including filing 12 new bankruptcy petitions.  Bankruptcy Counsel did not require or generally engage the assistance of another attorney to assist him during his absence or otherwise refer cases altogether to another attorney.

8.  Notwithstanding the Email, neither the Complaint Deadline or Claim Deadline were calendared by Bankruptcy Counsel's staff.  In fact, aside from the Email, it appears that Bankruptcy Counsel's office had virtually no records memorializing the December 16, 2016 meeting or his retention.

9.  Neither Creditors nor Ferrene followed up with Bankruptcy Counsel on the filing of a complaint. Bankruptcy Counsel did not file a complaint objecting to the dischargeability of Creditors' debt or a motion prior to the Complaint Deadline for an extension. In addition, no party filed a proof of claim on behalf of Creditors.

10.  The Declarations submitted at the hearing indicate that Creditors and Ferrene's first contact with Bankruptcy Counsel after the initial December 16, 2016 meeting was a telephone call in March 2017 to inquire about the status of the adversary complaint.  At this time, Creditors and Ferrene learned that a complaint had not been filed and the Claims and Complaint Deadline had been missed, and Bankruptcy Counsel was reminded of the December 16, 2016 meeting.

11.  The Declarations further indicate that the parties did not meet again in person until April 10, 2017, at which time Creditors and/or Ferrene provided Bankruptcy Counsel with copies

---

[4]  The exact date of Bankruptcy Counsel's return to South Carolina is not specified in the record.

3

of documentation related to Creditors' claims. *See* Horton Decl. ¶ 7 (Aug. 1, 2017). As a result of the meeting, the parties decided to proceed with the Motion, which was filed on April 17, 2017.

## CONCLUSIONS OF LAW

Bankruptcy Rule 4007 provides that complaints to determine the dischargeabity of a debt under § 523(c) must be filed no later than 60 days after the original date set for the § 341 meeting of creditors. Bankruptcy Rule 4007(c). This deadline may be extended by the Court if a motion for an extension is filed before the expiration of the 60-day deadline. *Id.*

If the 60-day deadline passes without the filing of either a motion for extension or complaint, then a nondischargeability complaint is time barred unless grounds exist for the Bankruptcy Court to exercise its equitable powers to permit a late filed complaint. *See Farouki v. Emirates Bank Int'l Ltd.*, 14 F.3d 244, 248 (4th Cir. 1994) (time limitations for filing nondischargeability complaints are not jurisdictional, but are in the nature of a statute of limitations); *In re Hayden*, 246 B.R. 795, 800 (Bankr. D.S.C. 1999) (holding that the time bar imposed by Bankruptcy Rule 4007(c) is an affirmative defense, subject to waiver, estoppel and equitable tolling).[5] In this case, Creditors have asked the Court to apply the affirmative defense of equitable tolling.

As explained by one commentator:

> The rationale behind the doctrine of equitable tolling is that a statute of limitations should not start running until the plaintiff is aware that he or she may have a cause of action. It permits courts to extend a limitation period on a case-by-case basis to prevent inequity, even when such period would otherwise have expired. Where applicable, equitable tolling operates to suspend the running of the statute of limitations until such time as the factor or circumstance causing the limitations

---

[5] Bankruptcy Rule 4007, which requires a complaint to determine dischargeability to be filed within a prescribed period of time, and which has its own rules regarding the enlargement of that time, is excepted from the application of Bankruptcy Rule 9006. Consequently, a late-filed nondischargeability complaint may not be allowed on the basis of excusable neglect. *See In re Weinberg,* 2006 WL 2673252, *4 (3d Cir. 2006); *In re Santos*, 112 B.R. 1001, 1008-09 (9th Cir. B.A.P. 1990) (excusable neglect cannot justify an untimely complaint to determine dischargeability).

4

> period to be suspended is discovered or should have been discovered but thereafter, a party must act with due diligence in asserting its rights.

James Lockhart, Annotation, *Equitable Tolling of Federal Rules of Bankruptcy Procedure, Rule 4007(c), Providing 60–Day Deadline for Filing Dischargeability Complaints*, 40 A.L.R. Fed.2d 541 (2009).

Equitable tolling is an extraordinary remedy, whose application does "not extend to garden variety claims of excusable neglect." *Ross v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003); *accord Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 95-95 (1990) (equitable tolling is an extraordinary remedy to be applied only sparingly). It is available to a party only when, despite the exercise of due diligence, "extraordinary circumstances beyond [movant's] control prevented him from complying with the statutory time limit." *Ross v. Lee*, 339 F.3d at 246 (internal citations omitted); *see CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 476 (4th Cir. 2015) (equitable tolling, "has long been considered an extraordinary remedy in this circuit, and litigants face a considerable burden to demonstrate that it applies," because the doctrine is "'reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period . . . and gross injustice would result.'" (internal citations omitted)).

To support a request for equitable tolling, Creditors must show: (1) extraordinary circumstances; (2) beyond their control or external to their own conduct; (3) that prevented them from filing a complaint on time. *Rouse v. Lee*, 339 F.3d at 246. This requires proof that "some objective factor external to the defense impeded counsel's efforts to comply with . . . procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The case law makes it clear that attorney error or negligence, standing alone, is not an "extraordinary circumstance" that justifies the application of equitable tolling. *Rouse v. Lee*, 339 F.3d at 248. Furthermore, because counsel is an agent of the party, the actions of counsel are attributable to the client under standard agency

5

principals. *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (in "our system of representative litigation . . . each party is deemed bound by the acts of his lawyer-agent"); *Coleman v. Thompson*, 501 U.S. 772, 753 (1991) (quoting *Carrier*, 477 U.S. at 488) (Counsel's "ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.' "). As a consequence, counsel's negligence is the negligence of the party and cannot, as a matter of fact or law, present "circumstances external to the party's own conduct." *Rouse v. Lee*, 339 F.3d at 249-50.

Creditors argue that it the circumstances surrounding the birth of Bankruptcy Counsel's grandson should be viewed as the "extraordinary" and "external" event needed to support equitable tolling. Creditors maintain that their failure to file a nondischargeability complaint was the result of circumstances "unknown to [them] and completely beyond their control." Furthermore, they argue that because they engaged Bankruptcy Counsel to represent them on December 16, 2016, they "bear neither blame nor responsibility for the events which caused them to miss" the Complaint Deadline, and believe they took "prompt action to protect their interests and had reason to believe they had done so."

The record is clear that it the Complaint Deadline was not missed because of the family crisis that took place in December 2016. As evidenced by the December 16 Email, despite being burdened by the stress caused by an ill grandchild, Bankruptcy Counsel recorded clear notes and instructions regarding the meeting with Creditors and the deadlines, and emailed instructions about the matter to his staff. Instead, as admitted by Bankruptcy Counsel the hearing, the Complaint

6

Deadline was missed because Bankruptcy Counsel and his office staff forgot about the Creditors' engagement.[6]

While the familial events impacting Bankruptcy Counsel and his firm on and around December 16, 2016 were certainly frightening, upsetting, and unplanned, it is undisputed that the crisis resolved itself and Bankruptcy Counsel and Ms. Friedman returned to work at least two weeks before the Complaint Deadline. During their absence from the office, Bankruptcy Counsel's staff conducted business in the Bankruptcy Court, undisputedly filing at least twelve (12) new cases during the period of time counsel was on the West Coast. While it is unfortunate that during this time period, the office neglected to docket important deadlines for the Creditors, and also unfortunate that everyone appeared to have overlooked the Creditors, these errors are not extraordinary.[7] Because these errors are of Creditors' counsel, as a matter of law, they are not errors or events that are external to the Creditors' own conduct.

In reaching this conclusion, it is important to note that all the blame for the missed deadline should not be placed on Bankruptcy Counsel. It appears from the record that Creditors were not, in fact, as diligent in protecting their interests as they maintain.

While Creditors initially acted with diligence to engage Bankruptcy Counsel in a timely fashion, they thereafter waited almost four (4) months to follow up with Bankruptcy Counsel. It is inferable from the record that Creditors were aware of the Claims Deadline and Complaint Deadline. Prior to March 2017 Creditors took no steps to ensure that Bankruptcy Counsel, their

---

[6] Likewise, in her Declaration, Ms. Friedman conceded that she and Bankruptcy Counsel forgot about his meeting with Creditors. *See* Decl. of Dale Friedman ¶ 10 (Aug. 1, 2017).

[7] Although Bankruptcy Counsel attempted to explain the failure on the size of his office and the disruption occasioned by the extended absence of his office manager, who had responsibility for docketing, this argument must fail. Whether a firm is large or small, it is incumbent upon counsel, particularly those who practice in a deadline intensive field such as bankruptcy, to have procedures in place to ensure both that all deadlines are docketed, and to deal with unforeseen contingencies that may disrupt an office's standard procedures and affect clients.

agent, was undertaking the steps necessary to meet the Complaint Deadline. There is nothing in the record to indicate that they called to inquire about an engagement letter or the status of a draft complaint or proof of claim, or to provide any documentation to enable the pleadings to be drafted.[8] Nor did they contact Bankruptcy Counsel to request a copy of the filed Complaint. Further, Creditors did not utilize the assistance of their state court attorney, Ferrene, to inquire about the status of the matter. Instead, Creditors appear to have themselves forgotten the matter until March 2017. In the Court's view, this does not reflect diligence on the part of Creditors.[9]

## CONCLUSION

Creditors have failed to meet their burden of showing that extraordinary circumstances beyond their control or external to their own conduct prevented them from filing a nondischargeability complaint prior to the passing of the Complaint Deadline. Therefore, for the reasons stated herein, the Motion is denied.

**AND IT IS SO ORDERED.**

---

[8] It appears from the record that Bankruptcy Counsel was not provided with any documents, including a copy of the State Court Action, until April 2017 after the Complaint Deadline had passed.

[9] The Motion does not seek relief to extend the Claims Deadline, though it appears to the Court that if raised, Creditors would argue similar assertions as those contain in the Motion. As the standards for extending the deadline to file proofs of claim is similar, the Court would reach the same conclusion that the Claims Deadline should not be equitably tolled. *See In re Gulley*, 400 B.R. 529 (N.D. Tex. 2009) (discussing the application of equitable tolling to the proof of claim filing deadline); *In re Gil-De La Madrid Perez*, C/A No. 12-02042 MCF, 2014 WL 792025 (Bankr. D.P.R. Feb. 25, 2014) *aff'd Gil-De La Madrid-Perez v. Bowles Custom Pools & Spas, Inc.*, 817 F.3d 371 (1st Cir. 2016) (noting that Fed. R. Bankr. P. 3002 provides few exceptions for the Court to extend the deadline to file a proof of claim under Fed. R. Bankr. P. 3002, but holding that the Court has the power to equitably toll of the proof of claim filing deadline).

8